**SIGNED THIS: July 11, 2011**

_____
**THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE**

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JEFFREY and AMANDA WESTBAY, | ) | No.  09-81889 |
| | ) | |
| Debtors. | ) | |
| | ) | |
| | ) | |
| GARY T. RAFOOL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 10-8097 |
| | ) | |
| FIFTH DAY PEORIA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## O P I N I O N

This matter is before the Court on the amended motion for summary judgment filed by the Defendant, Fifth Day Peoria, LLC (FDP).  Gary T. Rafool, the Chapter 7 Trustee (Trustee) for the bankruptcy estate of Jeffrey and Amanda Westbay, sued FDP to avoid and recover a $50,000 transfer either as a preference or a fraudulent conveyance.

The facts are undisputed. In 2005, Jeffrey Westbay and William Bara became members of a Limited Liability Company known as Frye-Day Restaurant Group, LLC (the LLC), formed to own and operate a restaurant in Peoria. The third and only other member was WCT Properties, Inc. (WCT), an Illinois corporation whose president is William Torchia, who is also the sole manager of the LLC which changed its name to FDP in 2007. As their initial capital contributions, WCT contributed $900,000, while Westbay and Bara each contributed $50,000.

To fund the restaurant operation, financing was obtained from Heartland Bank and Trust Company. On November 14, 2005, Westbay, Bara and Torchia met together at Heartland Bank to consummate the financing. Westbay and Bara each signed a promissory note in the amount of $91,800 and a commercial pledge agreement pledging their economic interest in the LLC to Heartland as collateral for the loans.[1] In further support of each loan, a control agreement and acknowledgment of pledge and security interest was executed and delivered giving formal notice to the LLC of the grant of each security interest. Bara signed the one giving notice to the LLC of the pledge of his interest; Westbay signed the one giving notice to the LLC of the pledge of his interest. Torchia also signed each document to acknowledge receipt of the notice on behalf of the LLC. These notices were addressed and directed only to the LLC, not to the other members, and were not acknowledged in writing by the other members.

The Westbays filed their Chapter 7 petition on June 17, 2009. Less than 90 days earlier, on March 31, 2009, Westbay had sold his member interest in the LLC to FDP for

---

[1] The loans were subsequently renewed and other loan documents were executed, but the Trustee submits, and the Court agrees, that the operative document is the commercial security agreement dated November 14, 2005.

2

$50,000. He did not receive the funds however. Instead, with Westbay's consent, FDP paid the funds to Heartland on account of its security interest in Westbay's member interest in the LLC. The Trustee concedes that if Heartland had a valid security interest in Westbay's member interest, then the transfer would not be avoidable. The Trustee alleges, however, that the attempted transfer of a security interest to Heartland was not valid because the conditions to such a transfer set forth in FDP's operating agreement were not met.

Under section 10.01 of the operating agreement, a member does not have the right to assign, pledge or hypothecate his interest, "except as otherwise specifically provided herein." Section 10.04 imposes a "unanimous written consent" requirement for the transfer of a member's interest and provides that where prior unanimous written consent has not been obtained, "no transfer . . . shall be effective unless and until written notice . . . has been provided to the Company and the nontransferring Member(s)."

FDP concedes that a writing evidencing the consent of Bara and WCT to Westbay's pledge was not created as part of the November 14, 2005, transaction at Heartland. FDP also concedes that no written notice of the pledge was sent to the nontransferring members. Because of the presence and participation by Bara and Torchia at Heartland on November 14, 2005, however, FDP contends that the written notice requirement was waived by the nontransferring members.

Whether the doctrine of waiver applies is solely a question of state law, in this case Illinois law. Waiver arises from an affirmative act, is consensual, and consists of an intentional relinquishment of a known right. *Home Ins. Co. v. Cincinnati Ins. Co.*, 213 Ill.2d 307, 326, 821 N.E.2d 269 (2004). Waiver requires (1) an existing right, benefit or advantage,

3

(2) knowledge of its existence, actual or constructive, by the person alleged to have waived it, and (3) an intention to relinquish it, either expressed or implied. *Ferrero v. National Council of Knights & Ladies of Security,* 309 Ill. 476, 481, 141 N.E. 130 (1923). An implied waiver may arise where a person against whom the waiver is asserted has pursued such a course of conduct as to sufficiently evidence an intention to waive a right or where his conduct is inconsistent with any other intention than to waive it. *Ryder v. Bank of Hickory Hills,* 146 Ill.2d 98, 585 N.E.2d 46 (1991). Implied waiver of a legal right must be proved by a clear, unequivocal and decisive act of the party who is alleged to have made a waiver. *Id.* Implied waiver has also been viewed as an estoppel-type remedy, applied where the conduct of the waiving party has misled the other party or lulled him into a false belief that strict compliance with a contractual obligation will not be required. *Wolfram Partnership, Ltd. v. LaSalle Nat. Bank,* 328 Ill.App.3d 207, 223-24, 765 N.E.2d 1012 (Ill.App. 1 Dist. 2001).

As a preliminary matter, it should be noted that FDP's operating agreement does not contain a non-waiver clause that might limit application of the doctrine of waiver. *See Centerre Trust Co. of St. Louis v. Continental Ins. Co.,* 167 Ill.App.3d 376, 379-80, 521 N.E.2d 219 (Ill.App. 5 Dist. 1988) (where contract contained a clause providing that no action or failure to act shall constitute a waiver unless specifically agreed in writing).[2] FDP's operating agreement does contain a waiver clause at paragraph 13.09, but it provides only that a party's failure to enforce a right once does not waive its enforcement on subsequent occasions. *Cf. General Grocer Co. of Illinois v. Bachar,* 51 Ill.App.3d 907, 365 N.E.2d 1106 (Ill.App. 3 Dist. 1977).

---

[2] Even Waiver Only in Writing provisions can themselves be waived orally or by conduct. *Chicago College of Osteopathic Medicine v. George A. Fuller Co.,* 776 F.2d 198, 202 (7th Cir. 1985).

4

The restriction on transfer set forth in paragraph 10.01 of FDP's operating agreement applies, by definition, to a member's pledge or hypothecation of his interest. Paragraph 10.03(a) conditions the effectiveness of a transfer upon either the unanimous written consent of all members or written notice of the identity of the proposed transferee and the date of transfer to FDP (the Company) and the nontransferring members. Doubtless this condition exists for the benefit of the nontransferring members; no one contends otherwise.

It is important to recognize that Torchia was wearing two hats. He was the manager of the LLC and he was the president of one of its members, WCT. Ordinary principles of agency would impute Torchia's knowledge and conduct to the two entities on whose behalf he was authorized to act. *McRaith v. BDO Seidman, LLP,* 391 Ill.App.3d 565, 589, 909 N.E.2d 310 (IllApp. 1 Dist. 2009).

The first two elements of waiver are thus met. WCT and Bara were entitled to written notice of Westbay's pledge on account of their status as nontransferring members. FDP was entitled to the same notice as "the Company." The operating agreement was signed by Torchia, Bara and Westbay, thus providing at least constructive notice, of the right to receive written notice of Westbay's pledge, to Bara, WCT and FDP. Neither Bara, WCT or FDP expressly waived the receipt of written notice. So the only issue is whether waiver should be implied.

First and foremost, the purpose of the notice requirement is to ensure that the nontransferring members and the LLC itself are not left in the dark about a transaction that affects or could affect the status of the transferring member's future participation and/or financial interest. Since Bara and Torchia were active participants in the very transaction

5

at Heartland that they were entitled to receive written notice of, they are hardly in a position to complain (and, in fact, they are not complaining) about lack of written notice. Since they had actual contemporaneous notice of Westbay's pledge, written notice would have amounted to nothing more than a redundant technicality.

Second, Westbay and Bara were borrowing money from Heartland to obtain working capital for the restaurant business. FDP and each of its members had a common economic interest in seeing those loans obtained. Far from being mere disinterested bystanders, Bara, WCT and FDP *wanted* Westbay to pledge his interest to Heartland and they realized a tangible financial benefit when he did so – the funds were obtained for FDP's use. A clearer course of conduct in support of the waiver is hard to imagine.

Third, Heartland relied on the validity of the pledges and extended the loans based, at least in part, on receiving the pledges as collateral. Westbay and Bara also relied on the validity of their own and each other's pledges when they incurred personal liability to Heartland. If Bara, WCT or FDP were now challenging the waiver, they would be equitably estopped from prevailing on that challenge. In this Court's view, a different result is not warranted simply because it is the Trustee who is making the challenge.[3]

Based upon the undisputed facts in the record before the Court, the nontransferring members and the LLC implicitly waived their right to receive a written notice of Westbay's pledge of his economic interest on November 14, 2005, through the presence and

---

[3] While the issue of the Heartland's security interest arises in the context of an avoidance action, in which the Trustee possesses certain special avoiding powers, waiver is purely a state law doctrine and the analysis of the validity issue is determined the same as if the challenge was being asserted by one of the parties to the transaction in question.

participation of Bara and Torchia at the Heartland loan closing. Their course of conduct evidenced a clear, unequivocal and decisive intention to consent to the pledge and to waive the requirement of written notice, and their conduct is inconsistent with any other intention. Their conduct also caused the other parties to the loan transaction, including Heartland, to incur liabilities or assume risks that would not have otherwise been incurred or assumed. Therefore, the doctrine of waiver is applicable, Heartland's security interest in Westbay's economic interest in FDP is valid and the $50,000 payment to Heartland is not avoidable.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###